(No. 85-CC-0201– )

LILLIAN LAPALIO, Claimant, *v.* UNIVERSITY OF ILLINOIS HOSPITAL and THE STATE OF ILLINOIS, Respondents.

*Opinion filed August 27, 1987.*

PETER FRICANO, for Claimant.

NORMAN P. JEDDELOH, for Respondents.

RAUCCI, J.

This is a claim for personal injuries by Claimant who alleges that, on July 29, 1983, the Claimant went to the University of Illinois diagnostic clinic for a medical appointment. At the conclusion of her appointment, as she was leaving the diagnostic clinic and was walking down the hall from the diagnostic clinic, Claimant noticed a substance surrounded by a puddle on the ground. She stated the substance looked like ice cream. Claimant walked around the ice cream and puddle and slipped and fell, hitting her head on the floor. Later, as she was being assisted in getting up, she saw what she slipped on as being "spider lines" coming out of the puddle of melted ice cream. The Claimant claims that

she did not see the "spider line" of melted ice cream until after she had slipped.

After the accident, the Claimant was taken back to the diagnostic clinic where she was examined, and because of her headache and numbness, she was taken home, instead of back to work. She was told to go to bed and not move. She testified that later that night, because of severity of her pain, she was taken to the University of Illinois Hospital emergency room where she was admitted. Several days after her discharge from the hospital, Claimant had to again go to the hospital emergency room because of numbness and head pain. She alleges that as part of her medical treatment as a result of this accident, her attending physician, Dr. Sugar, put her in a neck collar and traction. Claimant testified that she was in traction for three or four months after the accident, and that at the present time, she periodically uses her neck collar. In addition to treatment by Dr. Sugar and Dr. Skosey of the Respondent's hospital, Claimant also obtained medical treatment by Dr. Katz of Rush-Presbyterian Hospital because of her head pain and sleepless nights. Dr. Katz eventually placed the Claimant on Naprosyn and Elavil prescription medication, which the Claimant still uses on a daily basis for her head and rib pain to help her sleep. She still has these problems as a result of her injuries. The Claimant stated that she is still under active medical treatment from Dr. Katz as a result of the injuries she sustained on July 29, 1983. She alleges that to the present time she cannot do certain basic household chores as a result of her injuries.

Claimant was independently examined by Dr. David Stulberg, an orthopedic specialist. His findings are that Claimant had degenerated joint disease of the cervical spine and had sustained a strain of her cervical

spine as a result of her fall. He further stated that her symptoms could be decreased with the administration of a physical therapy program and the institution of certain exercises.

The Claimant was employed by the City of Chicago's Department on Aging and Disabilities. As a result of this accident, she lost 30 days from work immediately after the accident plus another two weeks of days off of work occasioned when she had to go to the doctor or had to stay home because of her head pains. Her amount of wage loss was $2,644.59. She testified that as a result of the injuries she sustained, she was forced to retire early, causing her additional wage loss of $20,332.00. As a result of her accident on July 29, 1983, Claimant incurred hospital, medical and drug bills in the amount of $4,879.38.

Respondent introduced evidence indicating that the ice cream spill had occurred immediately before the accident as indicated by the fact that the ice cream had not fully melted. A witness for the Respondent, who was working nearby at an intake desk, testified that she warned the Claimant of the condition and warned her to avoid the area and use care.

Respondent claims that Claimant is guilty of negligence in walking in the area after being warned and because of the theory of comparative negligence, Claimant is not entitled to recover. Respondent further claims it had insufficient notice of the ice cream spill to remove it and hence is not liable for Claimant's injuries.

The record is clear that Respondent had actual notice of the ice cream spill. It is also clear that Claimant attempted to avoid the spill albeit unsuccessfully. We cannot conclude that her failure to avoid the thin "finger" of the melted ice cream constitutes comparative

negligence. Our determination of this issue is fortified by our recognition that visitors (or patients) of medical institutions are preoccupied with concern over the reasons which brought them to the institution. This increases the need for immediate attention of personnel to spills and the like.

Based on the testimony and evidence adduced, we assess Claimant's damage at $7,500.00.

It is therefore ordered, adjudged and decreed that Claimant is awarded $7,500.00 in full and complete satisfaction of this claim.